## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**BARBARITO TORRES,**

      **Petitioner,**

**v.**                                                    **No.  4:06cv436/SPM/MD**

**JAMES R. MCDONOUGH,**

      **Respondent.**

_____

### REPORT AND RECOMMENDATION

      **Before the court is an amended petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 8).  Respondent has filed a response and supplemental (docs. 12, 15, 23) to which petitioner has replied (docs. 14, 16, 25).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

### BACKGROUND AND PROCEDURAL HISTORY

      **On September 25, 1982 petitioner became engaged in a verbal altercation with his neighbor.  He returned to his home, procured a rifle, and used it to shoot and kill the neighbor.  He was charged by the State of Florida in a two count indictment with**

first degree murder and possession of a firearm during a felony.  He ultimately pleaded guilty to the reduced charge of second degree murder with a firearm and the original charge of use of a firearm during a felony.  On June 28, 1983 he was sentenced to life, with a minimum three year mandatory, on the murder count.  Entry of a sentence on the second count was suspended.

On October 12, 1988 the Florida Parole  Commission ("Commission") set petitioner's Presumptive Parole Release Date ("PPRD") for September 25, 1992, by which time he would have served just over nine years of his life sentence.  As the PPRD approached, the Commission sought input from the sentencing court.  A Circuit Judge, who was not the sentencing judge, objected to early release, and stated that petitioner should serve the life term.  Based on this input, the Commission extended petitioner's PPRD for 60 months, until March 25, 1997.

Petitioner sought relief in the state courts, ultimately winning when the Supreme Court of Florida granted mandamus, holding that the Circuit Judge's objection did not meet Florida's statutory requirement of good cause such as to justify extending the petitioner's PPRD.  *Torres v. Parole and Probation Commission*, 613 So.2d 12 (Fla. 1992); Doc. 12, ex. D.  The Commission then reversed its earlier extension of petitioner's PPRD, and he was released to parole on April 27, 1993.  The Certificate of Parole contained standard release conditions, and several special conditions.  Importantly, (1) petitioner was released to the custody of the United States Immigration and Naturalization Service ("INS"), which had lodged a detainer against him, (2) he would remain on parole for life or until released by the Commission, (3) he would report to his parole officer in Miami within 72 hours after release from INS custody.  Petitioner signed the Certificate of Parole and agreed to all its conditions (doc. 12, ex. F, pp 1-8).[1]

On February 18, 1994, the Commission wrote to petitioner (then in INS custody

---

[1]  Hereafter all references to exhibits will be to doc. 12 unless otherwise noted.

at the Hancock County Jail in Bay St. Louis, MS) "in reply to [his] letter of December 26, 1993" and gave him a name and address of a parole officer in Miami that he "should contact to request that [his] supervision be transferred to another state." (Ex. F, p. 9).  Petitioner was placed in a halfway house in Ohio, and was ultimately released from INS custody in Ohio some time in 1998.  According to petitioner, he was told by his case manager at the halfway house, and possibly by federal officials, that he was no longer on parole.  He therefore settled in Ohio, married, was employed, and obeyed the law for five years.  He did not report to a parole officer in Florida.

In the meantime, a warrant had been issued by the Commission in August 1999 based on its determination that petitioner may have violated his conditions of release.  In May 2002 petitioner was arrested in Ohio and returned to the Commission's custody.

Petitioner was given written notice that he had violated (1) Condition 1 by failing to report to a parole officer in Miami upon release from federal custody, thereby absconding from supervision, (2) Condition 3 by failing to make a full and truthful report to his parole officer before the fifth of each month, and (3) Special Condition 13 by failing to submit to a parole officer in Miami within 72 hours of release from federal custody.

A preliminary hearing was held on August 15, 2002 (ex. H).  A Commission parole officer testified that after petitioner was released from federal custody she attempted to contact him in Ohio but received no response.  Petitioner testified that he was shown and signed his parole certificate when originally released to the INS, but that he did not understand much English and was given no instruction in his native language, Spanish.  He further testified that the INS ultimately sent him to Ohio to live in a halfway house; that the INS did not give him a copy of his Parole Certificate when he was released from INS custody; and that he asked his case

manager at the halfway house about conditions of release, and she told him that he was not on parole.   The hearing examiner found petitioner guilty of all three violations, but recommended that he be reinstated to parole in consideration of the five year lapse between his release from federal custody and his arrest on the violation warrant, and his lack of any criminal activity during that time.   On September 18, 2002 the full Commission accepted the examiner's finding of guilt, but rejected his recommendation that petitioner be released to parole.  It therefore found petitioner guilty of the charged violations, revoked his parole, and ordered that he be returned to prison (ex. I).

Petitioner sought habeas relief in the state courts.  He raised four claims: (1) that his parole should not have been revoked because his alleged violations were not willful, (2) that the Florida Department of Corrections failed to provide him with an interpreter when he was originally paroled, (3) that the Commission failed to provide him with an interpreter when advising him of his rights at the preliminary hearing, and (4) that the Commission failed to provide counsel for the preliminary hearing.   The Circuit Court of Walton County, Florida denied relief in a written decision (ex. L).  Petitioner then petitioned for certiorari in the First District Court of Appeal of Florida, which  denied relief (ex. M).

In the meantime, on February 11, 2003, during a periodic review of petitioner's status, a Commission parole examiner had recommended that petitioner be released to parole (ex. J).  The full Commission disagreed, and after Extraordinary Review (EXR), kept petitioner's PPRD at October 25, 2001, suspended.  The Commission indicated that petitioner would again be interviewed during the month of March, 2008 (ex. K).

When this court began its initial review of the instant petition, it appeared that the court did not have all relevant state court files, because petitioner contended that he challenged the EXR decision, while respondent contended that he did not.  The

court ordered further filings (doc. 22), and the record now appears to be complete. It shows that petitioner filed a timely letter with the Supreme Court of Florida challenging the EXR decision (doc. 23-2).  The Supreme Court treated the letter as a petition for writ of mandamus and referred it to the Circuit Court of Leon County, Florida (*id.*).  On June 3, 2005 that court found that the petition sought certiorari, not mandamus, relief, and denied it.   The court held that petitioner had not shown that the Commission had violated any Florida law or regulation, or that it had abused its discretion in maintaining the suspension of his PPRD at October 25, 2001 (doc. 23-3, pp. 27-29).  Petitioner was unsuccessful in his further appeals to the state courts, and he now seeks federal habeas relief.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).   The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

## PETITIONER'S GROUNDS FOR RELIEF

In his amended petition, petitioner specifically challenges the Commission's July 9, 2003 EXR decision, contending that the Commission suspended his PPRD in violation of Florida Statutes (doc. 8, p. 1).  He raises ten grounds for relief.  In each ground he sequentially challenges the ten paragraphs of the Extraordinary Review decision.  Then, in his reply, he challenges the revocation of his parole, arguing on

various bases that the Commission's action in revoking parole was unconstitutional. Thus, petitioner really presents this court with two separate and distinct (although related) claims:   That both his parole revocation and the Extraordinary Review decision violated his constitutional rights.   For the sake of clarity, the court will address these contentions in that order.

      1.   <u>Revocation of parole.</u>

      Petitioner contends that  the Commission "abused its power" by excluding evidence that petitioner would live a law-abiding life if paroled, and that this denied him his right to due process (doc. 8, p. 4).[2]  Petitioner is not is not entitled to relief on this ground for two reasons.  First, this claim has not been exhausted in the state courts, because it was never presented to the state courts as a federal constitutional claim.  A careful reading of petitioner's pleadings directed to the revocation of his parole shows that he argued Florida statutes, Florida agency regulations, and Florida case law pertaining to revocation of probation, but he never told the state courts that the Commission's actions violated his federal constitutional rights.  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3]

_____

[2]   In reality, petitioner does not assert a federal claim here at all.  Although he uses terms like "unconstitutional" and "due process," he does not rely on binding United States Supreme Court precedent in support of any of his contentions.  Rather, he argues his case based almost entirely on Florida law, and in essence challenges the Commission's interpretation of the facts.  For that reason alone, he is not entitled to federal relief.

[3]   Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

      (A)  the applicant has exhausted the remedies available in the courts of the State; or

      (B) (i)  there is an absence of available State corrective process; or

         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the

thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct.

State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  *Duncan*, 115 S.Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion

---

[4] The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004). The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* This language, while not part of the Court's holding, provides an instructive and useful rule of thumb. With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

*Id.*, 416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.[6] However, after *Duncan*, the Eleventh Circuit has taken

---

[5] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

[6] *See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued

a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims

_____

in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).

*Case No: 4:06cv436/SPM/MD*

that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion."  *Judd*, 250 F.3d at 1318, or in a manifestly unfair manner, *Ford v. Georgia*, 498 U.S. 411, 424-425, 111 S.Ct. 850, 858, 112 L.Ed.2d  935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference

or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Here petitioner has not fairly presented a federal constitutional claim to the state courts.  Indeed, in all his state court pleadings, he did not once claim that he was relying on any federal right.  Since he can be granted relief in this court only if he is being held in violation of federal law, he must first have given the state courts the opportunity to consider his federal claims. *Duncan v. Henry*, *supra*.  He did not do so, and this claim is procedurally defaulted.  It is too late for him to return to the state courts, and he has not made the requisite showings to excuse his default.  This claim is therefore procedurally barred, and this court should not consider the claim.

The second reason that this claim must fail is that it is not cognizable in this court.  That is, it involves purely a matter of state law.  Federal habeas relief is available to correct only constitutional injury.  28 U. S. C. § 2254(a); *Estelle v.*

*McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance.  [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger,* 941 F.2d 1551 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (quoting *Carrizales, supra*).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).  In *Branan v. Booth*, for example, the Eleventh Circuit reaffirmed that "in the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508 (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980)).  State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair."  *Tejada v. Dugger*, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Estelle*, 502 U.S. at 352, 110 S.Ct. 668.

Throughout his state court proceedings, petitioner contended that the Commission violated Florida law, did not follow proper statutory procedure, did not

follow its own regulations, and so on.  But even though petitioner still says that the Commission acted as he claims, the state courts have said that it did not.  This court is the decided of Florida law; the Florida courts are.  This court is not empowered to go behind that state courts' review of the Commission's action without a showing of critical federal constitutional errors.  The instant case is not one in which there were such critical errors, if indeed there were any errors, that a constitutional violation is apparent.

Finally, if this court were to review the merits of petitioner's claim concerning the revocation of his parole, the claim would be found meritless.  Clearly established Supreme Court authority on due process in parole revocation proceedings is set out in *Morrissey v. Brewer*, 408 U.S. 471, 488-489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).  The *Morrissey* court held that a parolee threatened with being returned to prison is entitled at minimum to (a) written notice of the claimed violations of parole, (b) disclosure to the parolee of evidence against him, (c) opportunity to be heard in person and to present witnesses and documentary evidence, (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation), (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.  The record shows that petitioner was given all *Morrissey* protections at his parole violation hearing.

Petitioner's contentions that the Commission erred in revoking his parole were addressed by the Florida courts.  As noted above, petitioner sought relief from his parole revocation by filing a petition that was ultimately decided by the Circuit Court of Leon County, Florida.  The court addressed the four claims that petitioner raised, and found them all to be without merit.  First, the court found that petitioner had failed to show that the Commission abused its discretion in finding that his

parole violation was willful.  It noted that petitioner signed a document clearly showing that he was paroled for life and that he had to report to Miami when released from INS custody.  The court also noted that petitioner had written to the Commission before he was released from INS custody inquiring as to where he should report in Miami.  Further, the court rejected petitioner's argument that the Commission lacked authority to overrule a Commission examiner's recommendation, because the case upon which he relied, *Tedder v. Florida Parole Commission*, 842 So.2d  1022 (Fla. 1st DCA 2003) held only that the Commission could not overturn an examiner's *factual* findings.  Petitioner says that this is really "the crux" of his claim , but his reliance is misplaced.  The Commission *accepted* the examiner's factual findings - that petitioner had willfully violated his parole - and rejected only the examiner's recommendation that petitioner should be returned to parole.  *Tedder* did not require otherwise, nor does federal law.  A recommendation is just that.  The Commission is the ultimate decision maker on what to do with a parolee who has been found guilty of violating his parole.  Moreover, this court will not look behind the state court's determination of state law.  *Tejada v. Dugger*, *supra*.  The circuit court held that the Commission's decision did not violate florida law, and that the Commission did not abuse its discretion in revoking petitioner's parole (ex. L).  Petitioner has failed to show that this constituted a federal constitutional violation.

For his second claim in the state court petitioner contended that the Commission failed to provide him with an interpreter when he signed his parole release certificate in 1993.  The court held that this claim was barred by *laches*, because petitioner had waited more than a decade to raise the issue.  Time limitations are purely matters of Florida law.  Again, this court cannot look behind the state court's determination of state law.  *Tejada v. Dugger*, *supra*.

For his third ground petitioner contended that the Commission failed to

provide an interpreter when he waived his preliminary revocation hearing, and at the final revocation hearing.  The Commission received evidence on this point and found otherwise.  The state court likewise found that petitioner's claim lacked credibility. Credibility findings are for the trier of facts, in this case the Commission.  Petitioner says the Commission was wrong, but this court will not overturn factual findings, particularly credibility findings, no matter how fervently petitioner disagrees with them.  28 U.S.C. § 2254(e)(1); *Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002).

For his fourth ground petitioner contended that the Commission erred in failing to appoint counsel for him.  However, as the state court held, there is no federal constitutional right to an attorney at a parole revocation hearing.  *Morrissey v. Brewer, supra*.  The state court's ruling as to all four of petitioner's contentions did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief on this ground, and the writ should not issue.

2.   <u>Extraordinary Review Decision.</u>

Petitioner's second contention here is that he was denied due process and the Commission abused its discretion when it refused to release him to parole in 2003 after a parole examiner recommended release.  This claim is procedurally barred for two reasons.  First, after the Commission denied extraordinary review, petitioner filed a timely petition for writ of mandamus in the Florida Supreme Court (doc. 23-2, pp. 11).  That court transferred the case to the Circuit Court of Leon County, Florida (doc. 23-2, p. 2).  The circuit court denied relief on the merits in a written order (doc. 23-3, pp. 27-30)  The court held that there had been no abuse of discretion by the Commission when it decided not to authorize an Effective Parole Release Date, and to keep petitioner's PPRD in suspension, and when it declined to grant parole based on good behavior during incarceration.  The court reasoned that Florida law gives

the Commission broad discretion in such matters, that the Commission articulated the basis for its decision as required by law, and that there was sufficient evidence to support the Commission's decision.

The foregoing order was entered on June 3, 2005. On July 6, 2005 petitioner filed, in accordance with the well-known mailbox rule, a petition for certiorari in the First District Court of Appeal of Florida, challenging the circuit court's ruling (doc. 23-3, pp. 13-25). On September 14, 2005, the appellate court entered an order to show cause, *sua sponte*, giving petitioner fifteen days to show cause why the petition should not be dismissed for lack of jurisdiction, stating:

> The order denying the petition for writ of mandamus was rendered by filing with the clerk on June 3, 2005. The final day to timely invoke this court's jurisdiction was July 5, 2005. Fla. R. App. P. 9.100(c)(1); 9.400(e). The time limit for filing a petition for writ of certiorari is jurisdictional. Hofer v. Gil de Rubio, 409 So.2d 527 (Fla. 5th DCA 1982). Petitioner is entitled to the benefit of the "mailbox rule," Haag v. State, 591 So.2d 614 (Fla. 1992), but is not entitled to the additional time provided for by Florida Rule of Appellate Procedure 9.420(d), see Turner v. State, 557 So.2d 939 (Fla. 5th DCA 1990).

It is unclear whether petitioner responded to the order to show cause, but whether he did is irrelevant. The appellate court found that the petition before it was untimely, and the petition was dismissed on October 13, 2005 (doc. 23-3, p. 11). Petitioner's efforts on further review were unsuccessful.

From the foregoing, it is clear that petitioner's request for relief from the Commission's adverse EXR was procedurally defaulted under Florida law. Petitioner has not shown that the state procedural rule was applied in an "arbitrary or unprecedented fashion," *Judd*, 250 F.3d at 1318, or in a manifestly unfair manner, *Ford v. Georgia*, 498 U.S. 411, 424-425, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). Florida courts have decided what deadlines apply to different proceedings, and have determined whether the deadlines are jurisdictional. Here, the deadline for filing in the District Court of

Appeal was jurisdictional, and petitioner missed meeting the deadline.  Because the deadline was jurisdictional, the appellate court did not have jurisdiction - did not have the *power* - to review petitioner's case, even if it wanted to.  That is the law of the state, and this court will not look behind that law.  Petitioner has not made the requisite showings to excuse his procedural default.  This claim is therefore procedurally barred from review in this court.

The second reason this claim is procedurally defaulted it that it was never presented to the state courts as a federal constitutional issue.  In the state courts petitioner argued Florida law and regulations, and although he argued that his "rights" had been violated, he did not fairly present s federal constitutional claim to the state courts for resolution.  Petitioner has not made the requisite showings to excuse his procedural default, and for this second reason this claim is procedurally barred from review in this court.

Finally, if this court were to review the claim on the merits, the claim would still fail.  Petitioner obviously feels that he was treated unfairly.  He says that his failure to report in Miami was a misunderstanding.  He says he relied on his case manager at the halfway house, who told him he was no longer on parole.  He has presented proof that he lived and worked openly worked in Ohio for five years, obtained a drivers license, married, obeyed the law, and was otherwise a productive and law abiding citizen.  All of that may be true, and if true, it certainly supports an argument that petitioner has shown rehabilitation.  However, the Commission was not required to believe the story about what petitioner was allegedly told by his case manager, and it did not have to believe that petitioner innocently believed he was no longer on parole, or that he had shown rehabilitation.  It did not have to believe that petitioner was not abusing alcohol or drugs or was obeying the law, because a clean criminal record may mean only that petition had not been caught.

The Commission obviously did not accept petitioner's explanation, and

whether it was right or wrong is not for this court to decide.  The Commission reviewed all the evidence and entered a lengthy decision setting out the reasons for not admitting petitioner to parole.  That was the Commission's responsibility, and this court cannot substitute its view of the facts for the Commission's unless petitioner shows that the Commission's ruling resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner has not made that showing. He is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is respectfully RECOMMENDED that the amended Title 28 U.S.C. §  2254 petition for writ of habeas corpus (doc. 8) be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 12th day of December, 2007.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 4:06cv436/SPM/MD*